May it please the court. Good morning, Your Honor. Zulu Ali on behalf of the petitioner, Ruth Mary Acosta. I submit to the court that the Board of Immigration of Appeals incorrectly found or made an error with regards to the issue about the petitioner having relatives that had not been harmed and actually concluding that petitioner did not establish on that basis without analyzing whether there was any similarities between the petitioner and the particular individuals or particular family members that were found to have not been harmed in Honduras. Specifically, the Board of Immigration of Appeals, I guess, concurring with the immigration court, found that the mother and I believe the siblings who lived in Honduras had not been harmed and based upon the fact that they had not been harmed, concluded that there was no, it was not objectively reasonable that the petitioner would be harmed if she was returned to her country of origin. I believe that that is an incorrect analysis because I don't believe that without a evidence that there was similarities between those family members that were still living in Honduras with the actual petitioner, I think the board was incorrect in making that finding. Some of the issues that I believe, one, I think it began... May I ask you a question about that? It seems in your briefing, one of your responses is that at least two of the siblings live in Hacienda City. So is it your position that if Ms. Acosta were to live in Hacienda City, she would not face persecution? No, that is not my position, Your Honor. My position is that there are clearly other things. I mean, for me, I believe that there was really no analysis or the court never really actually looked into, and that was just maybe one of the reasons that was mentioned in the brief. However, I don't believe that that is significantly relevant to the petitioner's case. For example... Those two siblings share the same last name, correct, Acosta? No, I believe the last name was Acosta. However, the birth certificate and the actual name of Ms. Acosta is Acosta Mejia is her last name, and actually... I understand, but her siblings would have the same last names, right? First surname being the name of the father, the second surname being the surname of the mother. If they have the same parents, they would share the same surname as your client. The siblings. I don't think that they share the same name. I think that their last name is Acosta. However, my client's last name is Acosta Mejia. If I'm not mistaken, and I haven't looked at the birth certificate recently, I believe in the birth certificate it actually has her name as Mejia. And I think that the reason why I think that's also extremely relevant to the case is that the brother, Carlos Omar Acosta, at least based upon her testimony, and I believe it would have been under the record on page 308, she says that his name, the one that actually disappeared, his name was Acosta Mejia. But counsel, the IJ specifically found that your client's mother, two sisters, and brother still live there safely, have not experienced any problems with gang members or others. That she testified her son lives there with her mother, and he has not experienced any harm. In light of those findings, how can we find that the record compels the conclusion that your client would face future persecution if she were returned? I believe there's a couple of things. I think first of all, as pointed out by your honor earlier with regards to the surname, I think anytime that you have these cases where the issue is kinship or family relations, I think the similarities in the surnames are extremely important. And again, I don't believe the record is clear, nor do I really believe that it shows that the names of the individuals that were actually persecuted, specifically the petitioner's brother and my client who shared the same last name, is actually a different surname than that of the other siblings. Can I follow up on that? Two of the cousins that your client cites as evidence that she'll be persecuted have different last names. They're Arguelles'. Right. But you just said the last name is really critical on these kinship persecution cases. So why does it matter for Acosta versus Acosta Mejia, but it doesn't matter for Arguelles' versus Acosta Mejia? Well, I think that it matters. I guess the first question with regards to why it would matter with Acosta Mejia is that they are two very common surnames, I would imagine. And I don't have evidence to support that, but I would say that Acosta and Mejia are very common surnames. I think an Acosta Mejia, that combination would be not necessarily as common as just Acosta and Mejia. With regards to Arguelles, again, that is a name that I don't believe that the record is clear, other than the fact that there is a kinship between the Arguelles and the Acosta Mejia. But what the record does not show is, or what the record does show is that Arguelles is not similar to the mother and the other siblings. How do you respond, counsel, to the harmless error argument? In other words, assuming arguendo, that the agency erred in failing to explicitly declare that your client was similarly situated with family members in Honduras, how do you overcome the IJ's additional reasons for rejecting the claim for withholding of removal, namely that your client remained unharmed in Honduras for four years following her brother's disappearance, failed to prove a particularized risk, and failed to establish nexus? Well, Your Honor, with regards to the issue of the fact that she had been unharmed during the time period in which she was there, within the four years from the time that her brother was disappeared, I believe that the main issue, and I don't believe that it's harmless, because I think this Court has made it clear that the similar-situated analysis, I believe, is critical to this particular case, or any case in which the Board makes a decision, as it did in this case, where it said that by the fact that there was no harm to the mother and the siblings, that it's not reasonably objective. That's what the Board says, and being reasonably objective is at the heart of determining a particular social group. And I think that at least the remanding the Court to take into—remanding it to the Board of Immigration of Appeals to address that issue, I believe, is extremely important because it's clear that that analysis is not proper, and I think it makes it extremely difficult from a perspective of trying to—from a pellet perspective, trying to make a determination on that particular issue. And so, at least if the Board addresses the issue or gives an opportunity for the petitioner to at least make its case with regards to that issue, as far as the—as to the similarities between the family members and herself, I believe that that would be—and I would ask for the Court, and I believe that that would be an appropriate remedy in a case like this. As far as the other issues, again, I mean, I think that when it comes to the fact that she had been unharmed within that four-year period of time does not necessarily mean that she would not be harmed if she was returned to her country of origin, especially in light of the fact that there were other family members that had been harmed as well. Now, that does push me back into the position, I'm sure, of the argument that the family members that were—that had issues were family members that apparently had a different name than the petitioner. However, I still believe that those are issues that should be addressed by the Board of Immigration of Appeals, and I see that I'm beyond that 10-minute period, and I guess I could—am I correct with that? Have I went over? You have, but I'll still give you the three minutes, but let me ask Judge Kasman if you have any more questions at this time. I do not, no. Judge Bennett, do you have any more questions? No, Judge Ko, thank you. All right. Thank you. I still will give you the three minutes of additional time, but let's go ahead and go to the government now, please. When you're ready, go ahead, please. May it please the Court, this is Gerald Alexander on behalf of the Attorney General. Just a quick correction for the record. The petitioner did testify that her siblings have the same last name as she does. It's at page 335 of the record. She says her sister Nora has the same last name, and then on page 336 of the record, she says that her sister Bianca and her brother Luis Roberto also have the same last name. So it's important to think of this in terms of where is the motive to harm the petitioner? And the answer is there is none. There is no motive whatsoever for anyone to harm this individual. Bear in mind that when her brother was disappeared, she stayed in Honduras for four years and then came to the United States. That was 30 years ago. So what the petitioner is asking- Let me ask you a question about that. You know, I might agree that it's difficult to say that the kinship is one central reason, but we just need to find for withholding that it's a reason. She's had eight family members murdered, eight. Why is there not a reasonable argument that it's at least a reason, the kinship is a reason? The answer is that none of those individuals who were harmed, as tragic as it is, in no case is there any evidence whatsoever that the persecutors knew or cared about what family they were members of. In each of those instances, and this is coming directly from the petitioner's testimony, there was a separate reason beyond any family name, family kinship, any of that, that the persecutors harmed them. And you can go right down the list. Her brother who was disappeared was a witness to a bank robbery, and so it's quite reasonable. Indeed, she testified. All right, so I would give you that there are additional reasons given, not paying the extortion demanded money, witnessing a robbery. There are additional reasons, but why isn't kinship a reason? At least there's her testimony, right? That she would be persecuted on the base of her family membership. Well, that's a conclusion. That's not a factual testimony. That's a conclusion that she made based on no evidence. Again, she testified that the family believes that the brother was killed because he was a witness to a bank robbery. Cousin Sergio owned a gas station and would not pay extortion. That is why the persecutors targeted, burned his house down, killed his family, completely separate from anything to do with family. And again, the fact that she has close relatives that have the exact same name as she does, who have lived in Honduras without any problems whatever, demonstrates the fact that the harm that befell her relatives had nothing to do with their family name. Can I interrupt you a minute? Testimony alone could be sufficient. I understand that you're saying her testimony is not sufficient in this instance, but you would agree with me in an immigration case that petitioner's testimony alone could be sufficient. Surely. If the testimony, if the agency found that the testimony all flowed together and all was sufficient to prove the point, then yes. And that happens very, very often in cases that never get this far because asylum is granted way before it would get to your level. Now, it seems that in this case, looking at the BIA decision, it seems that there was not a determination made that the petitioner lacked credibility. It was that her fear was not objectively reasonable, citing to the fact that the family members, including her mother and her child, remained unharmed in Honduras. That is correct. So, yeah. So, but does that, what is the standard of review before us regarding that determination? The standard of review here is substantial evidence, right? And so the fact that she was found to be credible goes to the idea that, yes, we accept that her family members were killed. We also accept that they were killed based on the reasons that she supplied. She is not, she never, there's nothing in the record that demonstrates that even she believes that her family members were killed by the same persecutors based on their family relation. That's simply not there. Each of these incidents was a separate incident where the family member did something that got crosswise with the criminal element in Honduras. There is nothing to suggest that any of these persecutors, again, nothing to suggest that they knew or cared that these individuals were members of a particular family. So we're dealing here with the murder of eight close family members. Yes. At what point, though, does a finding of coincidence become incredible? Well, I don't think it's a finding of coincidence, Your Honor. This is not the agency coming up with a reason that, well, we're going to try to find a justification to say that these people were not killed because of their family. This is testimony from the petitioner that her brother witnessed a bank robbery, that her cousin owned a gas station and wouldn't pay extortion, that the son of her cousin, Betty, worked in a business, also would not pay extortion. Her cousin, Ora, was a judge. And that the police obviously investigated thoroughly the death of a judge and found that it was an accident. So, I mean, the government is not saying that she doesn't have a reasonable fear that she would be harmed. The government is saying she doesn't have a reasonable fear, an objectively reasonable fear that she would be harmed because of her family connection. Correct. She has as much risk of being harmed as any citizen in Honduras. Regrettably, that risk is fairly substantial compared to the risk of being a citizen in the United States. But that is not a basis for asylum, as we all know. Judge Kesslman, do you have any additional questions? I do not. Judge Bennett, do you have any additional questions? No, thank you, Judge Koh. I don't have any questions either, so unless you want to make a last statement, I think. I do not. Thank you very much for your time. Okay. All right. Let's please then go ahead with any rebuttal. Okay, okay. Thank you, Your Honor. One of the issues that I did want to address just real quickly with regards to the statement about the names being the same, she was specifically asked the names of the different siblings, and she did give the names of those different siblings as being Acosta and not Acosta Mejia. I think it's somewhere around 328 to 321. But she did say the brother that disappeared in 308 was Acosta Mejia. I just wanted to make that clear. But I do also want to go back again and address the issue about the findings of the board. I mean, I think that the board at no question at any time ever questioned the issue of her fear, but the finding was her fear is not objectively reasonable as several family members, including her mother and her child, remain unharmed and endeared. And again, I just want to just reemphasize that finding of the fact that the mother and her child, and I'm assuming when they say her child, they're talking about the sibling, remained unharmed and endeared. Again, I don't believe that that finding should be held to without any evidence that they were similarly situated. I don't think that that should be a finding of the fact that there were not— in the group of the kinship or family relations. So again, I would just ask that at least that issue be addressed by the board and that analysis take place in order that the record is clear as to the court's findings with regards to that issue. And I don't have anything further unless Your Honors have any questions. Judge Katzman, do you have any questions? No, Judge Koh, thank you. Judge Bennett, do you have any questions? No, thank you, Judge Koh. Okay, I don't have any questions either, so I'm going to thank both of you for your arguments. This case is submitted. Thank you. Thank you both. All right, the last case is up for argument.
judges: BENNETT, KOH, Katzmann